## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**DANIEL J. LEVITAN and**
**PAMELA H. LEVITAN**
    **Plaintiffs,**

**vs.**            **3:09cv321/MCR/MD**

**MARY ANN PATTI, MARY ANN**
**PATTI, LLC, MAP TITLE**
**INSURANCE AGENCY, LLC,**
**KEITH P. GUTHRIE, RAM 2000**
**CONTRACTORS, INC., DAVID**
**MORGAN, JOHN SMITH, CASEY**
**CONN, MIKE AMERSON, OLIVER**
**JERRY GULSBY, and JOHN**
**DOES 1-10,**
      **Defendants.**

_____

## REPORT AND RECOMMENDATION

   This matter is before the court upon four related motions. Defendants M.A.P. Title Insurance Agency, LLC, Mary Ann Patti, LLC, and Mary Ann Patti filed a motion to dismiss the third amended complaint (doc. 97). Defendants Keith Guthrie, RAM 2000 Contractors, Inc., and Scenic View Properties, LLC also moved to dismiss on the same grounds (doc. 99). Plaintiffs filed a pleading entitled "Motion to File Fourth Amended Complaint, in Response to Defendant's Motion to Dismiss, for more Definite Statement or to Strike Plaintiff's Third Amended Complaint" (doc. 144), wherein plaintiffs reference their accompanying memorandum and fourth amended complaint (docs. 145 and 146) as a response to defendants' motions to dismiss. In

conjunction with the proposed fourth amended complaint, plaintiffs also filed a motion for joinder (doc. 147), and defendants have responded in opposition (docs. 151 and 161).

Plaintiffs' motion for leave to file the fourth amended complaint should be granted and accepted (doc. 145 and 146). Defendants' motions to dismiss plaintiffs' third amended complaint are consequently denied as moot (doc. 97 and 99). In light of the procedural posture of this case and the discussion that follows, the court will sua sponte address dismissal of plaintiffs' fourth amended complaint for failure to comply with Federal Rules of Civil Procedure 8, and 9(b), and 12(b)(6) (docs. 156 and 163). The court will not address the allegations against Frank Patti, Joe Patti Seafood Company, Patti Shipbuilding, Inc., Sharon Wilson, Sharon Wilson, P.A., Scenic View Properties, LLC, and the Escambia County Sheriff's Office, as they were not included in the motion for joinder and are not parties to this case.

Plaintiffs Daniel J. Levitan and Pamela H. Levitan filed a nine count fourth amended complaint against Mary Ann Patti, Mary Ann Patti, LLC, M.A.P. Title Insurance Agency, LLC ("M.A.P. Title"), Keith Guthrie, RAM 2000 Contractors, Inc. ("RAM 2000"), David Morgan, John Smith, Casey Conn, Mike Amerson, Oliver Jerry Gulsby, and "John Does 1-10, as employees of the Escambia County Sheriff's Office." They allege violation of Section 1962(c) and (d) of the Racketeering Influenced and Corrupt Organizations Act ("RICO"); violation of Section 772.103(3) and (4) of the Florida Civil Remedies for Criminal Practices Act; violations of Sections 1983, 1985, and 1986 of the Civil Rights Act of 1871; conversion; and legal malpractice or in the alternative legal practice negligence. Plaintiffs' claims are predicated on multiple business and personal transactions with defendants, a summary of which are provided herein.

### Factual History [1]

An introductory remark is necessary in this case because plaintiff's fourth amended complaint ("complaint") is convoluted and poorly organized. Delineating the order in which the alleged events occurred or which parties were involved in the events is difficult if not impossible in some instances. The complaint is littered with paragraphs of irrelevant personal commentary on certain parties' character. In addition, plaintiffs appear to make allegations against other Patti-family businesses that are not parties to this case. In light of this, the court has set forth the most pertinent allegations in as much detail as plaintiffs supply.

Plaintiffs Daniel J. Levitan and Pamela H. Levitan are husband and wife. Daniel is presently incarcerated in the Escambia County Jail, and Pamela resides in nearby Pensacola, Florida. Defendants Keith Guthrie and Mary Ann Patti are also husband and wife, residing in Pensacola, Florida. In 2007, the Levitans, Guthrie-Pattis, and their respective businesses began to engage in a series of transactions that resulted in the instant lawsuit.

Daniel Levitan worked for Joey Patti's Seafood Deli, owned and operated by Josie Patti Merrit, for six months in 2007. During this time, the deli granted Levitan a license to open a business under the name "Captain Joey Patti's Seafood Restaurant" at 312 E. Nine Mile Road, Pensacola, Florida. Nine Mile Partners, operated by Newton, Oldacre, McDonald, owned the property and leased it to either Levitan or PME-PAM Restaurants, LLC ("PME-PAM") (doc. 146 ¶ 19).[2]

---

[1] Plaintiffs failed to include attachments from the third amended complaint (doc. 85) to the fourth amended complaint. According to Local Rule 15.1, they are not considered part of the amended complaint. However, the court has reviewed the attachments and exhibits in detail and references the source document as appropriate. Upon review, the exhibits did not add supporting facts to plaintiffs' claim, but they did clarify which parties participated in the disputed transactions. *See, e.g.* pgs. 19-22 *infra.*

[2] Nine Mile Partners, Ltd. And PME-PAM Restaurants recorded a Memorandum and Notice of Lease commencing April 24, 2007. Escambia County Clerk of the First Circuit Court, Florida, Instr. 2008054761, Book 6354, pg. 1979. The First Amendment to Lease is referenced among plaintiffs' exhibits to their third amended complaint. Pamela May formed PME-PAM as the only member in 2006. Fla. Dep't of State Div. of Corps., Electronic Articles of Org. for Fla. Ltd. Liab. Co., Doc. L06000111132 (Nov. 16, 2006). PME-PAM filed three annual reports in 2007; Daniel Levitan is not listed as a managing member until May 18. Fla. Dep't of State Div. of Corps., Annual Report, Doc. L06000111132 (May 18, 2007). The 2008 Annual Report again lists Pamela May as the sole manager. Fla. Dep't of State Div. of Corps., Annual Report,

The property required construction, and Keith Guthrie's contracting business RAM 2000 was hired to build Captain Joey Patti's Seafood within 120 days (doc. 146 ¶ 21).[3] PME-PAM advanced RAM 2000 $50,000 for the project (doc. 146 ¶ 36). However, RAM 2000 never finished the project, and Mary Ann Patti, Mary Ann Patti, LLC, Guthrie, and RAM 2000 agreed to use the advance to fund a project for Guthrie and Patti's personal residence (doc. 146 ¶¶ 36, 60).

Community Coupon Corporation ("CCC") was incorporated by Jane Levitan in May 2007 with Mary Ann Patti, LLC as the registered agent until November 2007 (Fla. Dep't of State Div. of Corps. Doc. P07000057379 (2007)). CCC employed John Levitan–not a party to this action–to create coupons for cellular telephones using a Y-Max network owned by the Levitan family (doc. 146 ¶ 20, 34). Although Mary Ann Patti and Mary Ann Patti, LLC agreed to provide legal services in exchange for ownership in CCC, they failed to provide the services (doc 146 ¶ 34). Additionally, in October 2007, while Daniel Levitan was under Mary Ann Patti's employ, she threatened to call Levitan's probation officer if he did not give her a 10% ownership interest in the company (doc. 146 ¶ 57). CCC disassociated Patti and her law firm (doc. 146 ¶ 34). In retaliation, Patti took documents and money and created "phony" bills for the Levitans for unperformed legal services (doc. 146 ¶¶ 34, 59). Furthermore, she removed money from the CCC client trust account to use it personally (doc. 146 ¶ 59) In total, plaintiffs allege CCC paid Mary Ann Patti $2.5 million for legal services she did not perform (doc. 146 ¶ 59).

Contemporaneously, Daniel Levitan and Pamela Levitan formed PME-PAM and Finnegans Wake Irish Pubs, LLC ("Finnegans") (doc. 146 ¶ 23).[4] Mary Ann Patti,

---

Doc. L06000111132 (Jan. 8, 2008). The 2009 Annual Report lists Pamela May and, for the first time, Pamela Levitan as managing members. Fla. Dep't of State Div. of Corps., Annual Report, Doc. L06000111132 (Apr. 30, 2009).

[3] Assumably, RAM 2000's contract was with PME-PAM because it advanced the money, but the complaint does not state when they formed the contract.

[4] *See supra* note 2 (explaining when Daniel and Pamela Levitan were managing members of PME-PAM). Futhermore, Daniel Levitan has never been listed as a managing member of Finnegans, but Pamela Levitan is listed as the sole managing member in 2009. Fla. Dep't of State Div. of Corps., Annual Report,

Mary Ann Patti, LLC, M.A.P. Title, Scenic View, Keith Guthrie, and RAM 2000 induced plaintiffs into forming these companies for their own enrichment (doc. 146 ¶¶ 49-50). For example, Mary Ann Patti through Mary Ann Patti, LLC formed a sales and use tax account for Finnegans and was the point of contact for tax matters. However, O'Sullivan Creel–Finnegans and plaintiffs' accountants–did not prepare Finnegans' tax returns from December 2007 to October 2008. Mary Ann Patti received delinquency notices but "diverted" the mail. Subsequently, she and Keith Guthrie sued plaintiffs for failing to file the same returns. She also received and intentionally destroyed Finnegans' liquor license (doc. 146 ¶ 39).

In June 2007, plaintiffs and Finnegans sought to purchase property at 2100 West Nine Mile Road, Pensacola, Florida for $1.6 million.[5] Mary Ann Patti, Mary Ann Patti, LLC, and M.A.P. Title advised plaintiffs and PME-PAM to loan Finnegans $25,000 to secure a sales contract for the property (doc. 146 ¶ 68). Mary Ann Patti through Mary Ann Patti, LLC represented both the plaintiffs and M.A.P. Title for the closing transaction (doc. 146 ¶ 37).

Finnegans needed to raise additional funding for the purchase. To facilitate the closing, on October 12, 2007, Mary Ann Patti and Keith Guthrie executed and delivered a promissory note for $200,000 to the Alan E. Levitan Revocable Trust.[6] Daniel Levitan now holds the note, on which Patti and Guthrie are in default (doc. 146 ¶ 33). The Alan E. Levitan Revocable Trust agreed to lend Finnegans $200,000 because Mary Ann Patti verbally stated she would be personally responsible for the

---

Doc. L07000063519 (Apr. 30, 2009).

[5] J&G New Market Steakhouse, Inc. conveyed a warranty deed on the property commonly known as 1 New Market Street, Pensacola, FL 32534 to Finnegans on October 5, 2007. Escambia County Clerk of the First Circuit Court., Fla., Instr. 2007095813, Book 6229, pg. 1754. The same day, First Gulf Bank, NA, financed the $1,600,000 mortgage for Finnegans. Escambia County Clerk of the First Circuit Court, Fla., Instr. 2007095814, Book 6229, pg. 1757. Finnegans assigned First Gulf Bank all interest in rents as additional security. Escambia County Clerk of the First Circuit Court, Fla., Instr. 2007095815, Book 6229, pg. 1764.

[6] On May 1, 2008, the Alan E. Levitan Revocable Trust granted a mortgage not to exceed $450,000 to Finnegans Wake. Escambia County Clerk of the First Circuit Court, Fla., Instr. 2008036913, Book 6327, pg. 853.

loan (doc. 146 ¶ 69). Plaintiffs also believed the clause "and if more than one, each of them jointly and severally" was a personal guarantee. The seller also financed a $400,000 loan on the condition that the parties and Trusts guarantee the loan.[7] In total, Alan E. Levitan, Jane E. Levitan, and their respective revocable trusts guaranteed loans of over $2 million to purchase property on the mistaken belief that they would be indemnified by Mary Ann Patti, Mary Ann Patti, LLC, and Keith Guthrie in the event of default (doc. 146 ¶ 68-69). By the time Finnegans acquired the property, Mary Ann Patti had acted as the title agent, real estate agent, attorney for First Gulf Bank, and borrower on the loan.

In December 2008, PME-PAM issued two post-dated checks totaling $100,000 to Keith Guthrie, payable to RAM 2000. Daniel Levitan directed Guthrie to hold the checks until the Alan E. Levitan Revocable Trust transferred money to fund them. However, PME-PAM issued a stop payment on the checks because RAM 2000 refused to provide payment invoices from sub-contractors proving it was completing the construction (doc. 146 ¶ 38).

Finnegans restaurant operated from 2007 to 2009 and employed John Smith and Casey Conn as chefs and house managers (doc. 146 ¶ 13). At some point, Smith and Conn used the computer database or food inventory to take money and products (purportedly from Finnegans) (doc. 146 ¶ 62). Smith and Conn also gave Mary Ann Patti by way of internet, telephone, mail, and email "confidential information proprietary in nature" that alleged Finnegans owed them wages when it closed (doc. 146 ¶ 63-64). As part of the "series of attacks," Smith threatened one of plaintiffs' employees in an attempt to stop her from providing plaintiffs services (doc. 164 ¶ 66).

By the Spring of 2009 the restaurant had closed, and plaintiffs needed to sell the 2100 West Nine Mile Road property to repay debts (doc. 146 ¶ 72). Plaintiffs' contractors were cleaning the property when on-duty officer Mike Amerson directed

---

[7] This transaction is only generally referenced in the complaint, but exhibit J of the third amended complaint provides documentation evidencing the guarantee (doc. 85 exh. J).

them to leave. Amerson inferred he would arrest the workers if they did not stop cleaning, despite the fact that Daniel Levitan informed him of their right to be on the property. Amerson in turn threatened Levitan with arrest if he "persisted on this course." The complaint does not specify to what "this course" refers (doc. 146 ¶ 45, 72).

In January 2009, RAM 2000 and Guthrie filed a complaint with the Escambia County Sheriff's Office regarding PME-PAM Restaurant's stop-payment of the checks. Jerry Gulsby, and indirectly Mike Amerson as Gulsby's supervisor, conducted an investigation based on allegedly false affidavits supplied by Mary Ann Patti, Keith Guthrie, and Ram 2000 (doc. 146 ¶ 43, 71). On June 2, 2009, criminal arrest warrants were issued for Daniel Levitan (doc. 146 ¶¶ 43, 129d). Levitan was arrested "for these instruments"–the post-dated checks–and the arrest also violated his federal supervised release (doc. 146 ¶ 38, 43). He was found guilty of theft and sentenced to twenty-four months in federal prison (doc. 146 ¶ 131).[8] Plaintiffs believe Patti and Guthrie succeeded in having the Escambia County Sheriff's Office issue a warrant because Joe Patti Seafood Company contributed to Sheriff David Morgan's political campaign, and in repayment, Morgan directed Amerson to tell Gulsby to accept the affidavit (doc. 146 ¶ 71).

Lastly, Sharon Wilson represented RAM 2000 in federal litigation against plaintiffs. However, plaintiffs allege Mary Ann Patti, Mary Ann Patti, LLC, M.A.P. Title, Keith Guthrie, and RAM 2000 used Wilson as a "straw person" to create fraudulent attorney's fees in excess of $36,000 (doc. 146 ¶ 61).

"When the economy failed," Mary Ann Patti, Mary Ann Patti LLC, M.A.P. Title, Keith Guthrie, and RAM 2000 transferred assets to Scenic View to hide their "ill-gotten" gains from creditors (doc. 146 ¶ 70). Plaintiffs view these transfers, together with the defendants' collective actions, as a common scheme to injure plaintiffs in their businesses and property and wrongfully jail Daniel Levitan (doc. 146 ¶ 32, 43).

---

[8] While the complaint states he was incarcerated in federal prison, he has been incarcerated in the Escambia County Jail since March 1, 2010. Escambia Cty. Jail, Booking No. ECSO10JBN002982.

## Legal Standard for Sua Sponte Dismissal

A district court is generally prohibited from dismissing claims sua sponte. *Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc.*, 695 F.2d 524, 527 (11th Cir. 1983) (sua sponte dismissal deprived plaintiffs of right to procedural due process); *Danow v. Borack*, 197 Fed. App'x 853, 856 (11th Cir. 2006) (district court dismissed case with prejudice without addressing every claim). In particular, sua sponte dismissal is inappropriate when:

> (1) the defendant [has] not filed an answer and, thus, the plaintiff still [has] a right under Fed. R. Civ. P. 15(a) to amend the complaint; (2) the plaintiff's claim was brought in good faith and was not vexatious or patently frivolous; and (3) the district court [has] provided the plaintiff with neither notice of its intent to dismiss the complaint nor an opportunity to respond.

*Danow v. Borack*, 197 Fed. App'x at 856 (summarizing the rule set forth in *Jefferson Fourteenth Assocs.,* 695 F.2d at 527).

The court may satisfy the notice requirement in *Jefferson* without issuing a traditional order to show cause when the plaintiff has already been heard on the issues or has had an opportunity to respond. *Instituto de Prevision Militar v. Lehman Bros., Inc.*, 485 F. Supp. 2d 1340, 1347 (S.D. Fla.2007). For example, in *Instituto*, the plaintiff moved to reconsider the court's dismissal of its complaint based in part on an argument that the order was an improper *sua sponte* dismissal. *Id.* at 1347. The plaintiff Instituto de Prevision Militar ("IPM") relied on *Jefferson* and *Danow*, wherein the plaintiffs had neither an opportunity to address the issues nor an opportunity to amend their complaints under Fed. R. Civ. P. 15(a). *Id.* The court disagreed with IPM's reliance on these cases because it had been heard on the issues in two related cases. *Id.* Moreover, when the court dismissed the case, IPM's right to amend had expired because answers had already been filed. *Id.* In addressing a nearly identical motion, the court noted that despite its grant of several opportunities to amend, the amended complaint at issue still did not comply with the court's previous orders. *Id.* at 1348-49. On these grounds, the court found that the facts warranted dismissal with prejudice. *Id.*

The facts in the instant case are analogous to *Instituto de Prevision Militar.* *Instituto* stated that IPM had had the opportunity to raise its issues in *other* related cases. The court's position in this case is even stronger because plaintiffs have had the opportunity to raise and defend their issues in the *instant* case. This court has given plaintiffs ample notice and opportunity to defend by allowing them to file multiple amended complaints after providing specific instructions on how to correct deficiencies (docs. 10, 71, 81, 85, 146). Fed. R. Civ. P. 15(a)(1) states that plaintiffs may amend their pleading once as a matter of course within twenty-one days after service of a motion to dismiss, for more definite statement, or to strike. This fourth amended complaint, offered after defendants' motions in response to plaintiffs' third amended complaint (*see* doc. 97, 99), is plaintiffs' exercise of their right to amend once as a matter of course. Fed. R. Civ. P. 15(a)(3). As in *Instituto*, this complaint raises no new issues and still fails to comply with the court's previous orders. Plaintiffs' "good faith" in bringing this suit is also questionable; this complaint contains numerous pages of redundant, irrelevant, inflammatory, legally inaccurate, and frankly nonsensical paragraphs (*see, e.g.*, doc. 146 ¶¶ 17, 51, 56, 59, 77, 89, 126, 142). This case is factually similar to *Instituto* and distinguishable from *Jefferson* in that plaintiffs have not been denied due process rights. Under the circumstances, the court has complied with the *Jefferson* rule that a court cannot *sua sponte* dismiss a complaint with prejudice without giving the plaintiff at least one opportunity to amend his complaint to state a good faith claim. Proceeding on these grounds, *sua sponte* review for dismissal is appropriate in this case.

When review is appropriate, the court applies the same standard as if ruling on a motion to dismiss: the plaintiff's well-pled allegations are accepted as true and construed in the light most favorable to him. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). The plaintiff's complaint must state a claim upon which relief can be granted, and it should be dismissed if a dispositive legal issue precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S. Ct. 1827, 1832, 104 L. Ed. 2d 338 (1989); *see* Fed. R. Civ. P. 8(a), 12(b)(6). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief,

raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007)). Furthermore, vague and conclusory allegations and "threadbare recitals" of the elements of a cause of action are insufficient to satisfy Fed. R. Civ. P. 8. *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). In sum, while only a short and plain statement is required, it must have more than bare assertions that "the-defendant-unlawfully-harmed-me." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also* Fed. R. Civ. P. 8(a).

The Rules require a heightened pleading standard for claims involving RICO and civil rights violations based on fraud. Fed. R. Civ. P. 9(b); *Keating v. City of Miami*, 598 F.3d 753, 763 (11th Cir. 2010) (§ 1983 plaintiffs must allege with some specificity in the facts which make out their claim); *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997) (plaintiff failed to plead RICO claim with particularity). Under Rule 9(b), plaintiffs must state "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks*, 116 F.3d at 1380-81. Thus, a plaintiff's failure to comply with Rule 9(b) can warrant dismissal.

The instant complaint's compliance with Rule 8(a) and 9(b) is dubious at best. While the heightened pleading requirement necessarily lengthens a complaint, this document is sixty-five pages and contains 174 paragraphs, including paragraphs with up to twenty-two sub-parts. It justifiably could be called a shotgun complaint, "[containing] several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts. . .contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund v. Spear, Leeds & Kellogg*, 305 F.3d 1293, 1295 (11th Cir. 2002); *Andela v. Univ. of Miami*, 692 F. Supp. 2d 1356, 1370 (S.D. Fla. 2010) (quoting *Strategic Income Fund, supra*). "Shotgun complaints impose a heavy burden on the trial court because it must sift

through each and every count to determine which allegations are relevant to the cause of action purportedly stated." *Andela*, 692 F. Supp. 2d at 1370. As such, district courts are encouraged to dismiss them. *Id.* Nevertheless, to dismiss the complaint *sua sponte* solely on failure to submit a clear statement of allegations would unduly prejudice the pro se plaintiffs. Therefore, this report centers on culling the legal conclusions to decipher plaintiffs' factual support to address whether each claim, taken on its face, warrants dismissal.

<u>Count I: Violation of 18 U.S.C. § 1964(c)</u>

At the outset, while the third amended complaint (and the other previous complaints) alleges RICO violations without any actual statutory reference (*see* doc. 85), the fourth amended complaint alleges a specific violation under Title 18 U.S.C. § 1962(c), which states:

> It shall be unlawful for any persons employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. 1962(c). Plaintiffs fail to reference 18 U.S.C. 1964(c), which provides a civil cause of action to "any person injured in his business or property by reason of a violation of section 1962 of this chapter. . .." Nevertheless, the court assumes plaintiffs complain under both sections because the complaint must rely on § 1964 to provide a civil cause of action.

To establish a violation of 18 U.S.C. § 1962(c), plaintiffs must allege:

> (1) the existence of an enterprise; (2) that the enterprise affected interstate commerce; (3) that the defendants were employed by or associated with the enterprise; (4) that the defendants participated, either directly or indirectly, in the conduct and affairs of the enterprise; and (5) that the defendants participated through a pattern of racketeering activity.

*United States v. Starrett*, 55 F.3d 1525, 1541 (11th Cir. 1995). In addition, the plaintiff must be injured in his business or property "by reason of" violation of Section 1962. Courts strictly interpret "by reason of" to mean "as a direct result of" the

defendant's racketeering activity. 18 U.S.C. 1964(c); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459, 126 S. Ct. 1991, 1997, 164 L. Ed. 2d 720 (2006) (entrepreneur failed to show competitor's business practices were the proximate cause of his injury); *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1288-89 (2006) (on remand from the Supreme Court upon determination that the complaint sufficiently alleged proximate cause).

## A. Existence of An Enterprise

Plaintiffs list the following entities as an enterprise they refer to as the "Entire Enterprise" or "Patti-Guthrie Enterprise": Joe Patti Seafood Company; Patti Shipbuilding, Inc.; Mary Ann Patti, LLC; RAM 2000; M.A.P. Title; Scenic View; and the Escambia County Sheriff's Office (doc. 146 ¶ 81).

Title 18 U.S.C. § 1961(4) defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]" Based on the unambiguous definition of section 1961(4), plaintiffs have sufficiently alleged an "enterprise" for purposes of RICO.

## B. Enterprise Affected Interstate Commerce

As previously stated, to fall under the statute's purview, the RICO enterprise's means of carrying out its scheme to defraud must affect interstate commerce. 18 U.S.C. § 1962(c); *accord Starrett*, 55 F.3d at 1541. The affect on interstate commerce can be minimal. For example, the Supreme Court has found that out-of-state materials purchased by an enterprise constitutes involvement in interstate commerce. *United States v. Robertson*, 514 U.S. 669, 671, 115 S. Ct. 1732, 1733, 131 L. Ed. 2d (1995). "[A] corporation is generally engaged in commerce when it is itself directly engaged in the production, distribution, or acquisition of goods or services in interstate commerce." *Id.* at 672 (internal quotations omitted). Plaintiffs list an enterprise that consists in part of a legal practice, a title insurance agency, and a building contractor (doc. 146). These businesses necessarily acquire goods and

services from other states or countries.  Therefore, plaintiffs sufficiently allege the enterprise "affects interstate commerce."

## C.  Defendants as Associates of Enterprise

Plaintiffs allege the following defendants violated 18 U.S.C. §1962(c):  Mary Ann Patti; Mary Ann Patti, LLC; M.A.P. Title; Keith Guthrie; RAM 2000; David Morgan, Escambia County Sheriff; John Smith; Casey Conn; Mike Amerson, individually and in his official capacity; Oliver Jerry Gulsby, individually and in his official capacity; and John Does 1-10 as employees of the Escambia County Sheriff's Office (doc. 146).[9]  Although Morgan, Amerson, and Gulsby are referred to in the complaint as being controlled by the other parties, the inconsistency is ultimately irrelevant (doc. 146 ¶83).

The Eleventh Circuit Court of Appeals (along with the Supreme Court and eleven other circuits) adheres to the "non-identity rule" in evaluating a section 1962(c) complaint, which states that a corporation may not simultaneously be named as a liable "person" and as the "enterprise."  *United States v. Goldin Indus., Inc.*, 219 F.3d 1268, 1271 (11th Cir. 2000); *Cox v. Admin'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1404 (11th Cir. 1994) (corporation cannot be liable for the RICO violations of its employees when it is merely the "victim, prize, or passive instrument of racketeering"); see, *e.g.*, *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161, 121 S. Ct. 2087, 2089-90, 150 L. Ed. 2d 198 (2001);  *Begala v. PNC Bank*, 214 F.3d 776, 781 (6th Cir. 2000); *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 445 (5th Cir. 2000).  The courts agree that the plain language of the statute requires the entities to be distinct. *Cedric Kushner Promotions,* 533 U.S. at 162.

In *Goldin*, three companies–Goldin Industries, Inc., Golden of Alabama, Inc., and Goldin Industries Louisiana, Inc.–appealed their criminal conviction for violating 18 U.S.C. § 1962(c), and the conspiracy provision, § 1962(d).  219 F.3d at 1269.  The

---

[9]  Plaintiffs appear to allege other parties' involvement in the enterprise or as associates, including Joe Patti Seafood Company, Patti Shipbuilding, Joey Patti's Seafood Deli, Frank Patti, Jr., Patti-Merritt Enterprises, Inc., Josie Patti Merrit, and Scenic View Properties, LLC (doc. 146 ¶¶ 15, 27).  As previously stated, these entities are not named in the action and are therefore disregarded as potential defendants.

indictment alleged the RICO enterprise consisted of Martin C. Goldin, Steven L. Goldin, Jack Goldin, the three companies, and others. *Id.* However, the indictment named the same parties as "persons employed by and associated with the enterprise."

The Goldin individuals were all officers, directors, and owners of the several companies. Brief of Appellant Goldin Industries Louisiana, Inc. at 13, *United States v. Goldin Indus., Inc.*, 219 F.3d 1268 (11th Cir. 2000). The three corporations had intertwined ownership, control, and management. Essentially, they were family-owned and operated businesses. Brief of Appellant at 15. The court in *Goldin* agreed with the majority of circuits in holding that a RICO person must be distinct from a RICO enterprise for purposes of § 1962(c). 219 F.3d at 1271, *abrogating United States v. Hartley*, 678 F.2d 961 (11th Cir.1982). Accordingly, the three industries forming the "enterprise" were not distinct from the individual owners and thus could not be liable as "parties" within the meaning of 18 U.S.C. § 1962(c). *Id.* at 1271.

In the case at bar, the non-individual defendants are wholly owned, operated, and controlled by husband and wife Keith Guthrie, Mary Ann Patti, or both. Mary Ann Patti owns and operates Mary Ann Patti, LLC and M.A.P. Title (doc. 146 ¶¶ 5, 23). Keith Guthrie owns and operates RAM 2000 (doc. 146 ¶ 22). In fact, throughout the sixty-five page complaint, these five defendants' alleged actions are so intertwined that liability as to any particular action is indistinguishable. Plaintiffs' complaint practically concedes this fact:

> [Plaintiffs] bring this action against their former attorney Mary Patti-Guthrie; *her* law firm Mary Ann Patti, LLC; *her* title agency M.A.P. Title Insurance Agency, LLC; *her* husband Keith Guthrie; *his* construction company RAM 200 [sic] Contractors, Inc; and *Patti-Guthrie shell company* Scenic Vie [sic] Properties, LLC. . ..

(doc. 146 ¶ 23) (emphasis added).

Some defendants to this action are Florida limited liability companies. Regardless of classification, all limited liability companies are considered "entities" according to the Internal Revenue Service. 26 C.F.R. 301.7701-3(b) (2010); I.R.S. Pub.

3402 (Mar. 2010). In addition, Florida substantive corporate law applies principles of piercing the corporate veils of LLCs engaged in wrongdoing, suggesting it views limited liability companies as corporations, at least for purposes of misconduct. *See* § 608.701, Fla. Stat. (2010). Therefore, the identity-theory properly applies to defendant limited liability companies as well as corporations.

Like *Goldin*, these businesses are essentially family-owned and operated; they are not associates or an "enterprise" that is "distinct" from the individual owners and thus cannot be named as defendants as a matter of law. Accordingly, plaintiffs' complaint should be dismissed with prejudice as to claims against defendants Mary Ann Patti, LLC, M.A.P. Title Insurance Agency, LLC, and RAM 2000 Contractors, Inc.[10]

## D. Participation Through a Pattern of Racketeering Activity

A pattern of racketeering activity must consist of at least two predicate acts under the definition of racketeering activity. 18 U.S.C. § 1961(5). The predicate acts must also be related to each other, such as having the same or similar purposes, results, participants, victims, or methods of commission. *Design Pallets, Inc. v. GrayRobinson, P.A.*, 515 F. Supp. 2d 1246, 1256 (M.D. Fla. 2007) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S. Ct. 2893, 2901, 106 L. Ed. 2d 195 (1989)). The predicate acts must also be continuous, which can be shown by a series of related acts committed over a substantial period of time. *Design Pallets, Inc.*, 515 F. Supp. 2d at 1256; *see also Anderson v. Smithfield Foods, Inc.*, 209 F. Supp. 2d 1270, 1276 (M.D. Fla. 2002) (continuity is satisfied by a closed period of repeated conduct or past conduct posing a future threat, but not by isolated events). Importantly, the Supreme Court has noted that "requiring" two acts does not mean that two acts will always constitute a "pattern." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n. 14, 105 S. Ct. 3275, 3285, 87 L. Ed. 2d 346 (1985) ("[Two] isolated acts of racketeering activity do not constitute a pattern."). "The target of [RICO] is

---

[10] To be thorough, a full analysis follows as to the validity of the counts against each of the aforementioned parties.

thus not sporadic activity. . .It is this factor of *continuity plus relationship* which combines to produce a pattern." *Id.* (quoting S. Rep. No. 91-617, p. 158 (1969)) (emphasis added); *see also Cox*, 17 F.3d at 1397 (each monthly pension payment based on defendants' illegal request was a separate, related predicate act).

When a plaintiff's § 1962(c) claim consists entirely of the predicate acts of mail and wire fraud, the substantive RICO allegations must comply with the *Twombly, Iqbal*, and Federal Rule 9(b) regarding allegations of fraud or mistake. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010); *see also Twombly* and *Iqbal supra.* Plaintiffs' allegations as to each defendant must contain the following: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud. *Brooks,* 116 F.3d at 1380-81). Plaintiffs cannot "lump together" multiple defendants or vaguely attribute alleged fraudulent statements to "defendants"; "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Id.* at 1381 (quoting *DiVittorio v. Equidyn Extractive Indus., Inc.*, 822 F.3d 1242, 1247 (2nd Cir. 1987)).

In the instant case, plaintiffs rely solely on alleged violations of 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud) to establish a pattern of racketeering activity (doc. 146 ¶¶ 85-86). Both mail and wire fraud require (1) intentional participation in a scheme to defraud (2) the plaintiffs of money or property (3) using interstate mails and wires in furtherance of the scheme (4) resulting in plaintiffs' injury (5) that can be quantified as a specific amount of damages. 18 U.S.C. §1341 ("Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises. . ..."); 18 U.S.C. §1343 (same); *accord United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009) (electrical contracting company's misrepresentations to the Government were material because they had a natural tendency to influence); *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir. 2002) (defendants attaching false affidavit in support of

motion is malicious prosecution, not mail fraud); *United States v. Downs*, 870 F.2d 613, 614-615 (11th Cir. 1989) (mailing automobile title documents to further scheme of selling cars with altered odometers constituted mail fraud). To be clear, the specific intent required is the intent to defraud, not the intent to violate a particular statute or regulation. *Maxwell*, 579 F.3d at 1302. Furthermore, the term "scheme to defraud" is broader than common-law fraud and includes material misrepresentations or omissions intended to deceive another out of property. *Id.* at 1299.[11] A scheme to defraud may also exist without misrepresentations in fact, or lies, so long as the intent is to defraud. *United States v. Hoffa*, 205 F. Supp. 710, 716 (S.D. Fla. 1962) ("A scheme to obtain money unfairly by obtaining and then betraying the confidence of another is a scheme to defraud although no lies are told. . ..").

Because a civil action based on RICO violations encompasses three sets of standards, it is instructive to combine the standards into one statement of plaintiffs' burden in order to maintain a civil RICO claim predicated on mail or wire fraud. In total, the plaintiffs must allege that defendant employees or associates intentionally participated in an enterprise engaging in interstate commerce and used the interstate mails or wires in a continuous, related way to carry out a scheme to defraud plaintiffs of money or property, which scheme directly resulted in a quantified injury to plaintiffs' business or property.

Within the sixty-five page complaint, there is only one concise statement of the collective defendants' scheme to defraud the plaintiffs:

> [To] use Joe Patti Seafood Company; Patti Shipbuilding, Inc.; Mary Ann Patti, LLC; M.A.P. Title Insurance Agency, LLC; Scenic View Properties, LLC; Escambia County Sheriff's Office; and RAM 2000 Contractors, Inc., to defraud, blackmail, and extort plaintiffs or those in privity with them, to violate civil rights protected by the U.S. Constitution, and thus

---

[11] Courts disagree about whether the first-party must rely on the misrepresentation. The Supreme Court held that first-party reliance is not an element of proving mail or wire fraud, and stated in dicta that "a person can be injured 'by reason of' a pattern of mail fraud" without relying on misrepresentations. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 648-650, 128 S. Ct. 2131, 2138-39, 170 L. Ed. 2d 1012 (2008). *But see Ironworkers Local Union No. 68 v. AstraZeneca Pharmaceuticals LP*, 585 F. Supp. 2d 1339, 1343 (M.D. Fla. 2008) (relying on Bridge Court dicta, court refused to completely abolish reliance and intimated at least third party reliance may be required to establish proximate cause).

**deprive Plaintiffs of legal protections, money, property or U.S. Currency.**

(doc. 146 ¶ 90).  Keeping in mind the specific intent required is the intent to defraud and not the intent to violate a statute (such as one prohibiting blackmail, extortion, or violation of civil rights), and this excerpt is a mere recitation of legal terms, plaintiffs' statement can only be a jumping-off point.

1.  Allegations of mail and wire fraud predicated on legally compelled mailings

Plaintiffs allege eight counts of wire fraud and seven counts of mail fraud against Mary Ann Patti based on annual reports and renewals transmitted to the Florida Secretary of State for Mary Ann Patti, LLC, M.A.P. Title, Joe Patti Seafood, and Patti Shipyard (doc 146. ¶ 85(ii) [sic] a., c., h., i.).  Similarly, plaintiffs allege five counts of wire fraud against Keith Guthrie for transmissions to the Florida Secretary of State of annual reports and renewals for RAM 2000 and articles of organization for Scenic View (doc. 146 ¶ 85(ii) [sic] b., d.).  The mail or wire transmission does not have to be an essential element of the scheme, but it must be incident to an essential part of the scheme. *Schmuck v. United States*, 489 U.S. 705, 710-11, 109 S. Ct. 1443, 1447-48, 103 L. Ed. 2d 734 (1989) ("The federal mail [and wire] fraud statute[s] [do] not purport to reach all frauds, but only those limited instances in which the use of the mails is a part of the execution of the fraud, leaving all other cases to be dealt with by appropriate state law." (citing *Kann v. United States*, 323 U.S. 88, 95, 65 S. Ct. 148, 151, 89 L. Ed. 88 (1944)).  Legally compelled mailings, such as those imposed by state law, are not "steps in a plot to," "incident to," or "made for the purpose of" the scheme to defraud. *Parr v. United States*, 363 U.S. 370, 391, 80 S. Ct. 1171, 1183-84, 4 L. Ed. 2d 1277 (1960).  The subject mailings to the Secretary of State are clearly required by state law.  As to Mary Ann Patti and Keith Guthrie, these counts should be dismissed with prejudice.  In conjunction, the counts against Mary Ann Patti, LLC, M.A.P. Title, and RAM 2000 should be dismissed with prejudice (doc. 146. ¶ 85(ii) [sic] a.-d.).

2.  Allegations of Fraud by use of U.S. district court litigation

Plaintiffs allege defendants Mary Ann Patti, Keith Guthrie, Mary Ann Patti, LLC, M.A.P. Title, and RAM 2000 caused false billing of attorney's fees in the related case *Mary Ann Patti Guthrie, et. al. vs. Finnegans Wake Irish Pubs, LLC, et. al.*, case no. 3:09cv39 (doc. 146 ¶ 85(ii) [sic] f., g.).  However, the record in that case clearly establishes that attorney's fees were ultimately disallowed due to violation of local rules (3:09cv39, doc. 99), and this court may take judicial notice of the ruling. Therefore, plaintiffs cannot establish that defendants gained anything through the alleged fraudulent billing as a matter of law.  The two counts alleging wire fraud through fraudulent billing against Mary Ann Patti, Keith Guthrie, Mary Ann Patti, LLC, M.A.P. Title, and RAM 2000 should be dismissed with prejudice because they failed to show damages as required by 18 U.S.C. § 1964(c).

### 3.  Fraud on Plaintiffs for Finnegans Loans

Plaintiffs allege Mary Ann Patti, Mary Ann Patti, LLC, and M.A.P. Title used false representations to fraudulently close the Finnegans property transaction.  First, Patti facilitated a loan commitment to RBC Bank for $1,200,000 and by "fraud and omission coerced the Levitans into signing the financial instruments" (doc. 146 ¶ 85(ii) [sic] k.-l.).  She then secured a promissory note in favor of Alan E. Revocable Trust for $200,000 (doc. 146 ¶ 86b.-e.).  Patti inserted the language "and if more than one, each of them jointly and severally," which the Levitans understood as Ms. Patti's personal guarantee on the loan (doc. 146 ¶ 85(ii) [sic] j.).  The sellers also loaned Mary Ann Patti, Keith Guthrie, and Pamela Levitan an additional $400,000, collateralized by Finnegans stock (doc. 146 ¶ 85(ii) [sic] k.).  All loans defaulted, and multiple lawsuits ensued.

There are no fewer than six cases in addition to the instant case that are related to the same set of transactions and are either closed, reopened, or remanded to state court.[12]  "Reopened" status simply means the case has not been closed with

---

[12]  See 3:09cv39 (closed); Fla. 1st Cir. Ct. case no. 2008 CA 000144 (reopened); Fla. 1st Cir. Ct. case no. 2008 CA 000537 (remanded and reopened); Fla. 1st Cir. Ct. case no. 2008 CA 001516 (remanded and reopened); Fla. 1st Cir. Ct. case no. 2008 CA 001878 (remanded and reopened); Fla. 1st Cir. Ct. case no. 2008 CA 002650 (remanded and reopened); Fla. 1st Cir. Ct. case no. 2008 CA 003228 (remanded and reopened).

the court; it does not mean the court has not disposed of the claims. Therefore, the issues in some of the related cases that are "reopened" are nonetheless decided for purposes of relitigation. Several actions contain issues identical to the issues in this complaint.

First, plaintiffs filed an action regarding the $200,000 guarantee in the Florida First Judicial Circuit against Pamela May, Finnegans, Keith Guthrie, and Mary Ann Patti (doc. 146 ¶ 85(ii) [sic] j.; Fla. 1st Cir. Ct. case no. 2009 CA 002501). The court issued final judgment against Pamela Levitan and Finnegans Wake Irish Pubs, LLC, for $255,233.60 and closed the case on December 10, 2009 (Fla. 1st Cir. Ct. case no. 2009 CA 002501).

Second, RBC Bank filed suit against Pamela Levitan, Finnegans Wake Irish Pubs, LLC, Alan E. Levitan, the Alan E. Levitan Revocable Trust, Mary Ann Patti, and Keith Guthrie in association with the Finnegans property mortgage (Fla. 1st Cir. Ct. case no. 2008 CA 003228). Although plaintiffs removed several cases to federal court, RBC's motion to remand was granted, and state court issued final judgment against all defendants for $2,117,428.67 on December 16, 2010 (Fla. 1st Cir. Ct. case no. 2008 CA 003228, rcds. 145-146; *see* 3:09cv39). Due to post-judgment motions, the case is still open.

The Full Faith and Credit Clause of the United States Constitution applies to acknowledging judgments not just between state courts but between federal and state courts as well. U.S. Const. art. IV, § 1; 28 U.S.C. § 1738; *see Andela v. Univ. of Miami*, 692 F. Supp. 2d 1356, 1371 (S.D. Fla. 2010). Under collateral estoppel, once a court determines an issue of fact or law, "that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 973-74, 59 L. Ed. 2d 210 (1979). As applied, a state court final judgment on an issue cannot be relitigated in federal court with the same parties under the auspices of a different cause of action.

The Supreme Court authorizes a federal district court to abstain from ruling on an action when there is an ongoing parallel action in state court. *Colo. River*

*Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 1246, 47 L. Ed. 2d 483 (1987); *Moorer v. Demopolis Waterworks and Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004) (Colorado River Abstention Doctrine applied to alleged violation of Alabama Water Pollution Control Act).  The court must consider six factors in deciding whether to abstain:  (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties. *Moorer*, 374 F.3d at 997.

The Florida circuit court rendered judgment against the Levitans in their suit challenging the $200,000 loan (*see* Fla. 1st Cir. Ct. case no. 2009 CA 002501).  While this complaint states that the state court "noted at the hearing based on testimony that fraud could not be ruled out," the court did rule out fraud by finding against the plaintiffs (doc. 146 ¶ 85(ii) [sic] j.).  The present complaint alleges a different cause of action, but it is against the same essential parties and involves the same issue: the validity of Alan E. Revocable Trust's (and Daniel Levitan's by assignment) $200,000 guarantee.  Furthermore, although this is one count among many alleging a larger "scheme to defraud" under a federal statute, this one count has already been decided and cannot support plaintiffs' overall claim.  *See Montana*, 440 U.S. at 153. Therefore, plaintiffs should be collaterally estopped from relitigating the issue of fraud in procuring the $200,000 guarantee, and the related count of wire fraud should be dismissed with prejudice.

As to plaintiffs' counts alleging wire fraud in procuring the other loan guarantees, RBC's case against plaintiffs *and* defendants is still pending (*see* Fla. 1st Cir. Ct. case no. 2008 CA 003228).  The state circuit court obtained jurisdiction over this issue in October 2008, while the instant action began in July 2009.  This court does not consider either forum inconvenient, as all relevant parties live and do business in this region.  However, the desire to avoid piecemeal litigation on

transactions governed by substantive state law is central, regardless of the transaction's dual application to a federal RICO claim.

The parties have already entrenched themselves in state disputes, and Mary Ann Patti and Keith Guthrie's 2008 case against Finnegans Wake and plaintiffs bears directly on the issues in the instant complaint (Fla. 1st Cir. Ct. case no. 2008 CA 001516). The three count complaint demanded an accounting of Finnegans as joint debtors in danger of defaulting on loans, alleged the Levitans unlawfully conspired to take actions which harmed the Finnegans and its members, and alleged Patti and Guthrie misrepresented material facts regarding the formation and operation of Finnegans (*id.* at rcd. 1; 3:09cv39 doc. 8-10). Plaintiffs filed a third party complaint counterclaim against the following parties: Mary Ann Patti; Mary Ann Patti, LLC; M.A.P. Title; Keith Guthrie; RAM 2000; RBC Bank; and Clark,Parktington, Hart & Hart, P.A. (Fla. 1st Cir. Ct. case no. 2008 CA 001516 rcd. 79; 3:09cv39 doc. 8-23). Plaintiffs' third party complaint is substantially identical to the instant complaint. It states the same facts to support seven counts: violation of RICO, wire fraud, mail fraud, "civil conspiracy," and three state claims (3:09cv39 doc. 8-23). The district court found removal procedurally improper and concluded:

> [T]he claims and contentions embodied in the original and third party complaint...are part of an intertwined series of transactions or actions which, when viewed as a whole, cannot be said to be "separate and independent."Thus, the Levitans have failed to demonstrate that their RICO claims are separate and independent of the original claims brought by the Guthries so as to warrant their removal.

Report and Recommendation, 3:09cv39 doc.39 (adopted doc. 65). The instant complaint was filed in federal court, eliminating the issue of removal, but the facts supporting fraud relating to the Finnegans loans are nonetheless "part of an intertwined series of transactions" that are already being litigated in state court.

In light of the other pending actions regarding the "Finnegans Loans," the state courts have already undertaken to protect the parties' respective rights. Therefore, plaintiffs' counts against Mary Ann Patti, Keith Guthrie, Mary Ann Patti, LLC, RAM 2000, and M.A.P. Title for mail and wire fraud in connection with

"Finnegans Loans" should be stayed pending the state court's ruling on the related cases.

### 4. Using Illegitimate Means to Manipulate and Violate Court Rules

Plaintiffs' allegations that defendants transferred deeds and mortgages to hide assets fails to show that the injury suffered was the direct result of defendants' racketeering activity (doc. 146 ¶¶ 85(ii) [sic] n., 86f.). Even assuming that Mary Ann Patti, Mary Ann Patti, LLC, M.A.P. Title, (non-party) Scenic View, and Keith Guthrie did transfer deeds and mortgages by wire to disguise, hide, or encumber assets "so that *if sued and a judgment obtained* based upon the notes for loans executed prior to the transfers these Defendants would be able to claim the assets are no longer owned or unencumbered [,]" plaintiffs do not clearly state their injury. The complaint indirectly suggests two possibilities. First, plaintiffs may mean they suffer the threat of future injury because they may not be able to recover from possibly-insolvent defendants if their hypothetical proved true. However, these defendants' transfers would not prevent a court from redressing plaintiffs' harms; courts have broad powers to fashion equitable remedies. Therefore, plaintiffs do not state a direct injury under this theory. In any event, this future harm of a speculative judgment is unquantifiable, and as previously discussed, showing quantified injury is required to state a claim. *See Twombly*, 550 U.S. at 555 n. 3.

Alternatively, plaintiffs may mean they already suffered injury by losing money through executing the various notes and loans with the defendants. There is no nexus between an injury based on a fraudulent contract and the conduct of using interstate wires to transfer assets out of defendants' control. The activity related to that injury is the fraud in the contract itself, not the transfer, and while the wire transfer need not be central to the scheme, it must be incident to an essential part of the scheme. *Schmuck*, 489 U.S. at 710-11. Therefore, the count of wire fraud against Mary Ann Patti, Mary Ann Patti, LLC, M.A.P. Title, and Keith Guthrie through deed and mortgage transfers should be dismissed with prejudice.

### 5. Causing False and Fraudulent Charges

Plaintiffs list defendants as "companies and natural persons who used fraud, coercion, extortion, and blackmail" to deprive plaintiffs of property (doc. 146 ¶ 83, 85(ii) [sic] o.) However, they fail to specifically describe the property. Plaintiffs allege David Morgan, Jerry Gulsby, and Mike Amerson (either at the direction of Morgan or Mary Ann Patti), Mary Ann Patti, LLC, Keith Guthrie, and RAM 2000, used false allegations to bring criminal charges against Daniel Levitan (doc. 146 ¶ 43-44, 53, 71, 72, 85(ii) [sic] o.-r.). At the time of the criminal investigation, David Morgan was running for Escambia County Sheriff, and Mike Amerson was active in his campaign (doc. 146 ¶ 85(ii) [sic] q.). The Patti family also contributed significantly to Morgan's campaign (doc. 146 ¶ 43).

At the outset, plaintiffs claims surrounding Daniel Levitan's arrest wholly lack the specificity required to make out a RICO claim. Plaintiffs fail under both Rule 9(b) and well-settled precedent: they do not specify the nature of the "false allegations" as to documents, statements, or misrepresentations; the defendants are lumped together as to the statements and actions regarding the investigation, obtaining account statements, and jailing Daniel Levitan, and the complaint fails to state where or when the allegations occurred. Even the most forgiving reading of the complaint cannot remedy these omissions.

Assuming the statements could be attributed to specific defendants, plaintiffs still fail to show they were misled because they vigorously maintain throughout the complaint that the allegations were patently false. *See Pendergraft*, 297 F.3d at 1209 (11th Cir. 2002) ("They knew that [the Chairman] would deny making these threats, and they knew that their affidavits would not trick [the Chairman] into admitting otherwise. If they knew that they could not deceive Marion County, then they could not have had an intent to deceive."). Plaintiffs claim Mary Ann Patti and Keith Guthrie were motivated by their "scheme to ruin plaintiffs" by putting Daniel Levitan in jail to ensure success in civil litigation, and Morgan was motivated by the Patti family's political contributions (doc. 146 ¶ 85(ii) [sic] o.). The complaint does not state Amerson and Gulsby's motivations, but it is inferred that Morgan "controlled" the two as their superior at the Sheriff's Office.

Furthermore, plaintiffs assert defendants used threats, intimidation, and fear to carry out the pattern of racketeering activity (doc. 146 ¶ 83, 85(ii) [sic] o., 92). The mail and wire fraud statutes do not extend to schemes including threats and coercion through fear or force in the absence of deceit. *Pendergraft,* 297 F.3d at 1209 (citing theft by violence, threats intended to procure acquiescence in demands, and threats and coercion through fear of force). Because Daniel Levitan knew the allegations were false, the "deceit" is not at issue.

Upon careful inspection, plaintiffs use the definitions of extortion and malicious prosecution but categorize them as mail and wire fraud. Florida defines extortion as one who:

> [M]aliciously threatens to accuse another of any crime or offense, or by such communication maliciously threatens an injury to the person, property or reputation of another...with intent thereby to extort money or any pecuniary advantage whatsoever, or with intent to compel the person so threatened, or any other person, to do any act or refrain from doing any act against his or her will.

§ 836.05, Fla. Stat. (2010). The Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951. Under either statute, the defendant must obtain or attempt to obtain property from the plaintiff. *Scheidler v. Nat'l Org. for Women,* 537 U.S. 393, 402-03, 123 S. Ct. 1057, 1064, 154 L. Ed. 2d 991 (2003); *Raney v. Allstate Ins. Co.,* 2003 WL 25738233 at 4 (M.D. Fla. 2003). "[This] does not mean simply [to] interfere with, disrupt, or even deprive someone of their property rights." *Raney,* 2003 WL 25738233 at 4. Plaintiffs assert Mary Ann Patti and Keith Guthrie intended to jail Daniel Levitan to prevent him from bringing lawsuits, running his business, and cleaning up his commercial property (doc. 146 ¶ 72, 85(ii) [sic] o.-q.). Plaintiffs do not allege Patti or Guthrie attempted to obtain any property from Daniel Levitan, and any inference that their intent was to deprive Levitan of property rights is insufficient to state a claim for extortion.

The heart of plaintiffs' claims in this section is that defendants made false statements to further litigation and filed false criminal charges (doc. 146 ¶ 85(ii) [sic] o.-r.).[13]  These acts are properly characterized as malicious prosecution, not extortion, and malicious prosecution is not a RICO predicate act.  18 U.S.C. § 1961(1); *see Pendergraft*, 297 F.3d at 1206-07.  Therefore, the counts of wire fraud and mail fraud to bring about false criminal charges should be dismissed with prejudice as to all defendants.

## 6.  Scheme to Cancel Plaintiffs' Lease

Mary Ann Patti, Mary Ann Patti, LLC, Keith Guthrie, and RAM 2000 arranged a meeting with other non-parties to "conspire to take over the project at 312 E. Nine Mile Road" by canceling plaintiffs' property lease (doc 146 ¶ 85(ii) [sic] s.).  Again, the complaint fails to state with particularity where, when, and how the cancellation took place (other than to generically state it was caused by telephone calls and emails).  What were the precise statements or misrepresentations made?  When did the "conspiracy" to defraud take place?  Plaintiffs simply do not provide enough information on the face of the complaint to make out a claim for mail or wire fraud based on these allegations.  Therefore, the counts of wire fraud or mail fraud by inducing plaintiffs' lease to be canceled should be dismissed with prejudice as to all defendants.

## 7.  RAM 2000 Contractors, Inc.'s Fraudulent Invoices

Plaintiffs allege Keith Guthrie, through his business RAM 2000, transmitted false invoices in excess of $160,732.92 (doc. 146 ¶ 85(ii) [sic] t., 86 g.-h.).  Plaintiffs and PME-PAM advanced RAM 2000 $50,000 on the project (doc. 146 ¶ 36).  They believe he telephoned subcontractors and instructed them not to disclose invoices, contracts, or material lists to plaintiffs because he was not completing the work (doc. 146 ¶ 85(ii) [sic] t.).  The complaint lists the dates of each billing and mailing.  Relying on these facts, plaintiffs allege Keith Guthrie sent the false invoices on the

---

[13]  Plaintiffs apparently wanted to ensure this allegation was clear because the complaint restates the assertion in capital letters.

specified dates with Mary Ann Patti's aid to deprive plaintiffs of money (doc. 146 ¶¶ 60, 85(ii) [sic] t.).

Plaintiffs' claim fails on its face because it does not and cannot state "the content and manner in which the statements misled the Plaintiffs. . .." *Brooks*, 116 F.3d at 1380-81. Similar to the "false criminal charges" claim, plaintiffs admit Guthrie and RAM 2000's billings did not mislead them at all. In fact, plaintiffs were so suspicious of the billings that they demanded proof that subcontractors were being paid and stopped further payment to RAM 2000 (doc. 146 ¶ 85(ii) [sic] u.). Furthermore, merely setting out dates of "mailings" is insufficient; the complaint must state who sent the mailings, what they contained, and how they related to the alleged fraud (*see* doc. 146 ¶ 86g-h). While plaintiffs may be able to make out a state claim for conversion on these facts, they cannot sustain a mail or wire fraud claim based on RAM 2000's billings, and the counts of mail and wire fraud based on fraudulent contractor invoices should be dismissed with prejudice as to all defendants.

## 8. Mary Ann Patti and Mary Ann Patti, LLC's Legal Billings

From 2007 to the date of this complaint, Mary Ann Patti has served as attorney for both plaintiffs and defendants. The complaint states that Patti transmitted false billings and converted plaintiffs' money (doc. 146 ¶¶ 42, 61, 85(ii) [sic] g., j., v.). Plaintiffs essentially allege three separate counts of mail or wire fraud (the complaint is not consistent as to which statute applies to which facts).[14]

First, Mary Ann Patti filed affidavits with the district court for $33,000-$36,0000 for attorney's fees in conjunction with *Mary Ann Patti, et. al. v. Finnegans Wake Irish Pubs LLC, et. al*, case no. 3:09cv39 (doc. 146 ¶¶ 42, 61, 85(ii) [sic] f.-g., 86a.). However, plaintiffs concede that the court denied all attorney's fees and remanded the underlying cases to state court (doc. 146 ¶ 42). Therefore, plaintiffs cannot show defendants gained any money from false billing, and the counts of mail or wire fraud in legal billing should be dismissed with prejudice as to all defendants.

---

[14] The fourth allegation against John Levitan is irrelevant because he is not a party to this action.

Second, the complaint makes a blanket allegation that Mary Ann Patti and Mary Ann Patti, LLC converted $75,000 for client trust accounts "to represent John Levitan and Daniel Levitan. . .." (doc. 146 ¶ 56). The complaint does not state the time, place, or nature of the conversion, nor does it list statements, documents or misrepresentations made to effect the fraud. Any counts of wire or mail fraud in association with these facts is indiscernible and should be dismissed with prejudice as to all defendants.

Finally, Mary Ann Patti and Mary Ann Patti, LLC, "used the auspices of Scoggins III Realty" to transmit a First Amendment to Lease on June 27, 2007. Somehow, this lease resulted in Mary Ann Patti, LLC holding $62,500 in a client trust account. Plaintiffs were subsequently assigned all rights and interests to the lease (doc. 146 ¶ 85(ii) [sic] v.). Despite this assignment, plaintiffs claim Mary Ann Patti, LLC is wrongfully holding the money (doc. 146 ¶ 85(ii) [sic] v.). Plaintiffs have failed to flesh out the nature of their claim, and the court cannot fill in the blanks for them. There is no clear relationship between the lease and the money held, other than plaintiffs' legal conclusion that defendants converted the money. As such, plaintiffs fail to state a claim for mail or wire fraud against Mary Ann Patti and Mary Ann Patti, LLC for fraudulently obtaining money relating to an amended lease and the count should be dismissed with prejudice.

## 9. Actions of John Smith, Casey Conn, and John Does 1-10

John Smith and Casey Conn worked for plaintiffs as managers in their restaurants (doc. 146 ¶¶ 13-14). Plaintiffs make three allegations against Smith and Conn. First, they purportedly took products and money without permission by using the computer food inventory (doc. 146 ¶ 62). Second, sometime between July and October, 2008, they and John Does 1-10 mailed "confidential information proprietary in nature" to Mary Ann Patti to use against plaintiffs (doc. 146 ¶¶ 63-64, 86m.-n.). Third, Smith and Conn mailed plaintiffs a letter in 2008 claiming Finnegans owed them wages and further stated if plaintiffs did not pay "big" they would "go to the local newspapers" (doc. 146 ¶ 86n.). Smith and Conn (and others) also posted about the wages on internet blogs (doc. 146 ¶ 87b.).

Like most of plaintiffs' complaint, these claims lack specific facts about the time, place, parties, and quantified injury so that defendants are put on notice of the alleged misconduct. *See Twombly*, 550 U.S. at 555, n.3 ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."). The complaint does not state how much money Smith and Conn wanted, or what were the specific statements in the mailings and blog postings. Plaintiffs allegation consists mainly of legal conclusions that Smith and Conn committed fraud, extortion, and blackmail, without providing supporting facts. It is unnecessary to revisit the issue of threats of violence discussed in Count I.D. Therefore, all counts of mail or wire fraud against John Smith, Casey Conn, and John Does 1-10 should be dismissed with prejudice.

## 10. Miscellaneous Claims of Defamation

Plaintiffs make several general claims sounding in defamation: Mary Ann Patti tried to "publicly discredit" plaintiffs (doc. 146 ¶ 41); defendants collectively "sought to discredit Plaintiffs and to impugn their business interest by falsifying. . .derogatory comments on the internet to cause undue hardship to the Plaintiffs" (doc. 146 ¶ 70); Mary Ann Patti and Keith Guthrie "[spread] false statements to people known and unknown" (doc. 146 ¶ 77); defendants "[conspired]. . .to create rumors and innuendo" (doc. 146 ¶ 86i.). The validity of these claims is irrelevant for RICO purposes because RICO liability extends only to business and property injury. A plaintiff cannot recover for personal injury *or* pecuniary loss resulting from personal injury under RICO. *Pilkington v. United Airlines*, 112 F.3d 1532, 1536. Plaintiffs' claims are personal and cannot support a cause of action under any RICO theory. Hence, the claims sounding in defamation should be dismissed with prejudice as to all defendants.

## 11. Aiding and Abetting in Violation of 18 U.S.C. § 2

Although plaintiffs neither cite a statutory reference nor set out a separate section in the complaint, their final claims under Count I are that Mary Ann Patti, Keith Guthrie, Michael Amerson, Oliver Jerry Gulsby, John Smith, Casey Conn, and

John Does 1-10 aided and abetted the enterprise (doc. 146 ¶ 88-89). It is noted that throughout the complaint plaintiffs refer to most of these parties as "principal violators" under 18 U.S.C. § 1962(c).[15] Designations aside, plaintiffs' claims of aiding and abetting are meritless. First, the court has recommended dismissal of all counts of wire and mail fraud under Rules 8, 9(b) and 12(b)(6) and supporting precedent. *See infra* Count I.D.1-10. Without two predicate acts to constitute racketeering activity, plaintiffs cannot maintain a RICO action. Resultantly, any claims of "aiders and abettors" are moot.

Second, aiding and abetting requires that 1) the defendant was aware of his role in the enterprise when he assisted it, and 2) his assistance in committing the principal violation was knowing and substantial. *Cox*, 17 F.3d at 1410. Mary Ann Patti, Keith Guthrie, David Morgan, Michael Amerson, and Oliver Jerry Gulsby are central to plaintiffs' RICO allegations. Plaintiffs' attempt to add to the complaint everything "but the kitchen sink" is not persuasive. Smith and Conn's conversations and internet postings about unpaid wages were not "substantial assistance" to further the enterprise's scheme; they were the subject of a personal dispute between employee and employer (doc. 146 ¶ 62, 86m.-n.). Moreover, as discussed above, Smith and Conn's alleged conveyance of "proprietary information" is lacking in factual specificity, and it does not equate to principal action or aiding and abetting (doc. 146 ¶ 63-64, 86m.-n.). Therefore, the claims of aiding and abetting should be dismissed with prejudice as to all defendants.

E. Conclusion

Plaintiffs dedicate twenty pages specifically and twenty-four additional pages by reference to their first count: violation of 18 U.S.C. § 1962(c). In forty-four pages, plaintiffs did not allege sufficient facts to state that defendants injured their business or property by reason of defendants' violation of the Racketeering Influenced and Corrupt Organizations Act. Instead, the gravamen of their claim, as they state several times, is that Mary Ann Patti is a vindictive person, has a personal vendetta

---

[15] As previously mentioned, the Escambia County Sheriff's Office is not named as a party in this action.

against the Levitans, and wanted to "run them out of town" (*see* doc. 146 ¶¶ 36, 55, 76, 85(ii) [sic] o.). Plaintiffs central statement that "[defendants] had a common goal to execute unlawful schemes to obtain money by fraud, material misrepresentations to gain assets and money they were not entitled to" is a legal conclusion (*see* doc. 146 ¶ 60). To allow plaintiffs any additional amended complaints on Count I is futile. Therefore, Count I of plaintiffs' complaint should be dismissed with prejudice as to all defendants.

### Count II: Violation of 18 U.S.C. § 1962(d)

To plead a civil conspiracy to violate a substantive RICO provision, the plaintiff must allege that either the defendant agreed to the objective of the conspiracy or agreed to commit two predicate acts. *Am. Dental Ass'n*, 605 F.3d at 1293. An agreement can be inferred from the participant's conduct and does not require direct evidence of it. *Id.* at 1293. In *American Dental Association*, the plaintiffs' complaint stated that the defendants engaged in a conspiracy and then listed the defendants' parallel actions to argue an inferred agreement. *Id.* at 1293-1295. The court affirmed dismissal of the complaint for failure to state a cause of action. *Id.* at 1296. In accordance with *Twombly* and *Iqbal*, the court first stripped away conclusory allegations, such as "[e]ach Defendant and member of the conspiracy, with knowledge and intent, agreed to the overall objective of the conspiracy, agreed to commit acts of fraud to relieve Class Plaintiffs of their rightful compensation, and actually committed such acts." *Id.* at 1293-94. The remainder of the complaint alleged "parallel" acts that did not plausibly suggest a conspiracy. *Id.* at 1295.

In the instant case, plaintiffs make similar conclusory statements, for example:

Evidence brought out herein provides that Defendants were so involved with themselves to defraud Plaintiffs, that it constitutes clear circumstantial evidence that JOHN DOES engaged in a conspiracy with Defendants...to violate civil RICO in the Manner [sic] expounded upon above.

(doc. 146 ¶ 95). Stripping away such "formulaic recitations," the court is left with Paragraph 93, which simply realleges and reincorporates preceding paragraphs of the complaint.

In short, the allegations in Count II fail to state a claim for conspiracy to violate RICO. 18 U.S.C. § 1962(c); *see* Twombly, 550 U.S. at 557 (conclusory allegations do not show illegality). While the Eleventh Circuit has not explicitly held that a plaintiff's failure to state a substantive RICO claim necessitates failure of a conspiracy claim, it has held that where the substantive claim fails *and the conspiracy count lacks additional allegations*, the conspiracy claim necessarily fails. *Jackson v. Bellsouth Telecomm.*, 372 F.3d 1250, 1269 (11th Cir. 2004). Plaintiffs here do not allege any additional facts and, as previously determined, the underlying RICO claim is not viable. Accordingly, Count II, violation of 18 U.S.C. § 1962(d), should also be dismissed with prejudice as to all defendants.

### Count V: Violation of 42 U.S.C. § 1983 by Morgan, Amerson, and Gulsby

On January 18, 2008, Keith Guthrie and RAM 2000 filed a complaint with an Escambia County Sheriff's Office ("ECSO") deputy concerning the two checks plaintiffs issued through PME-PAM that were returned for non-sufficient funds (doc. 146 ¶ 129a.). After plaintiffs funded the account on which the checks were to be drawn, plaintiffs issued a "stop payment" on the checks because they believed Guthrie and RAM 2000 were not complying with the building contract (doc. 146 ¶ 129a.). Mike Amerson supervised the investigation and directed Oliver Gulsby to file a request for an arrest warrant (doc. 146 ¶ 129b.). At that time, Gulsby possessed banking records showing a $100,000 deposit into plaintiffs' account (*id.*).

Gulsby executed a probable cause affidavit, from which ESCO obtained an arrest warrant (doc. 146 ¶ 129d.). Daniel Levitan was arrested June 2, 2009 (doc. 146 ¶ 129d.). However, Guthrie and RAM 2000's affidavit was executed on June 19, 2009 (doc. 146 ¶ 129d.). Levitan was charged with one count of theft over $100,000, a first degree felony violation of section 812.014(2)(a) of the Florida Statutes, and two counts of stopping payment with intent to defraud, a third degree felony in violation

of section 832.041 (Fla. 1ˢᵗ Cir. Ct. case no. 2009 CF 002577 A). The court dismissed all charges for failure to prosecute on June 29, 2010 (doc. 146 ¶ 130).

Plaintiffs allege Keith Guthrie and RAM 2000's affidavit was false, and Amerson knew it to be false but pushed it through on Joe Patti Seafood Company's request (doc. 146 ¶ 129b.).[16] In short, Amerson and Gulsby pursued the charges because of their relationship with the Patti's, not because the affidavit had merit (doc. 146 ¶ 129f.). Additionally, between June and September 2009, Mary Ann Patti, Keith Guthrie, and RAM 2000 mailed a letter to a federal judge and the Office of the United States Attorney seeking to have Daniel Levitan "sent to federal prison" (doc. 146 ¶ 132).

Although plaintiffs do not flesh out the details, they allege the state charges resulted in a violation of Levitan's federal supervised release (doc. 146 ¶ 131). Subsequently, he was found guilty and sentenced to twenty-four months in federal prison; he was still incarcerated at the time the fourth amended complaint was filed (doc. 146 ¶ 131; *see* 3:08cr109-001 doc. 22). Plaintiffs claim Morgan, Amerson, and Gulsby deprived Levitan of his civil rights in violation of 42 U.S.C. § 1983 (doc. 146 ¶ 123, 126, 134-35).

Plaintiffs sue Morgan, Amerson, and Gulsby in their individual and official capacities. Concerning actions taken in their official capacity, it is not necessary to reach questions of qualified immunity, vicarious liability, or respondeat superior based on an employee's policy or custom.[17] A single incident can impose liability under appropriate circumstances. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S. Ct. 1292, 1298-99, 89 L. Ed. 2d 452 (1986); *Mandel v. Doe*, 888 F.2d 783, 792

---

[16] Plaintiffs do not state that only Daniel Levitan is alleging violation of his civil rights, but the facts in the count relate solely to him. Accordingly, Pamela Levitan does not state a claim for violation of her civil rights and will not be considered in Counts V-VII.

[17] Municipal liability is limited to deprivations caused by government policy or custom. *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658, 663, 98 S. Ct. 2018, 2021-22, 56 L. Ed. 2d 611 (1978); *Glech v. Clayton Cty.*, 335 F.3d 1326, 1329-30 (11ᵗʰ Cir. 2003); *but see City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24, 105 S. Ct. 2427, 2436, 85 L. Ed. 2d 791 (1985) (plurality) (when establishing liability for a custom or practice, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*.").

(11th Cir. 1989); *see also Cooper v. Dillon*, 403 F.3d 1208, 1222 (11th Cir. 2005) (police chief had final policymaking authority for City of Key West in law enforcement matters, and his one-time decision to enforce unconstitutional Florida statute against newspaper publisher was adoption of "policy" that caused deprivation of publisher's First Amendment right sufficient to render municipality liable under § 1983).

Section 1983 of the Civil Rights Act of 1871 "creates a species of tort liability[,]" and the common-law tort of malicious prosecution best fits Daniel Levitan's allegation because he seeks damages as a result of the arrest *and* imprisonment. *Heck v. Humphrey et al.*, 512 U.S. 477, 483-84, 114 S. Ct. 2364, 2370-71, 129 L. Ed. 2d 383 (1994) (contrasting malicious prosecution damages with false imprisonment, where recoverable damages are limited to those from detention to arraignment). To prevail in a malicious prosecution claim, the plaintiff must show that the prior criminal proceeding terminated in his favor. *Id.*; *Glenn Whiting v. Ed Traylor*; *R.H. Hamilton*, 85 F.3d 581, 585 (11th Cir. 1996). To allow otherwise would "permit a collateral attack on the conviction through the vehicle of a civil suit." *Heck*, 512 U.S. at 484 (quoting 8 S. Speiser, C. Krause, & A. Gans, *American Law of Torts* § 28:5, p. 24 (1991)) (internal quotations omitted). The *Heck* Court explicitly extends this rule to § 1983 damages actions wherein the plaintiff's claim requires pleading that his confinement is unlawful. *Id.* at 485.

In *Heck*, the petitioner brought a § 1983 complaint alleging county prosecutors and Indiana State Police investigators "engaged in an unlawful, unreasonable and arbitrary investigation leading to [his] arrest." *Id.* at 479 (internal quotations omitted). He sought compensatory and punitive damages but not release from custody. *Id.* The Seventh Circuit affirmed the lower court's denial of his appeal, reasoning that the correct vehicle for relief was a petition for writ of habeas corpus because he was essentially challenging his conviction. *Id.* at 479-80. The Supreme Court agreed in holding:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district
> court must consider whether a judgment in favor of the plaintiff would

necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 487.

Daniel Levitan's claim differs from the respondent's claim in *Heck* only in that he is challenging actions leading to a federal prison sentence, while the respondent in *Heck* challenged actions leading to a state court sentence. The difference is immaterial. Even though the state claims against Levitan were dismissed for failure to prosecute, Levitan concedes in the complaint that he was sentenced and found guilty of violating his supervised release "based on these allegations" and remains jailed (doc. 146 ¶ 131). According to established precedent, his civil rights claim cannot proceed as a matter of law because the federal sentence has not been vacated or otherwise terminated in Daniel Levitan's favor, and to allow it would amount to a collateral attack on the validity of that sentence. Therefore, Count V should be dismissed with prejudice.

Count VI: Violation of 42 U.S.C. § 1985 by Morgan, Amerson, and Gulsby

Plaintiffs use similar facts and allegations from Count V to support their § 1985(3) claim against Morgan, Amerson, and Gulsby. (*see, e.g.,* doc. 146 ¶¶ 129-134, 142d.-e.). Plaintiffs also restate that Amerson, while on patrol, ordered workers to vacate plaintiffs' property and further threatened Daniel Levitan with "trouble" if he made a report (doc. 146 ¶ 142c.). Finally, plaintiffs simply list the following as deprivations violating § 1985: due process of law, right to remain silent, marital privileges, accountant-client privileges, and attorney client privileges (doc. 146 ¶ 140).

Plaintiffs demonstrate a lack of understanding of the scope of 42 U.S.C. §1985(3). As part of the Civil Rights Act of 1871, this section was designed to "stifle the serious class-based deprivation of constitutional rights by private parties, not to serve as a general federal tort law." *Cook v. Randolph Cty., Ga.*, 573 F.3d 1143, 1156 (11th Cir. 2009) (quoting *Trawinski v. United Techs.*, 313 F.3d 1295, 1299 (11th Cir. 2002)) (attempted deprivation of voting rights related legal fees are not within §

1985(3)); *see Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 274-76, 113 S. Ct. 753, 761-763, 122 L. Ed. 2d 34 (opposition to abortion is not discrimination against a "class" of "women seeking abortion" and in any case does not rise to the level of deprivation contemplated by § 1985(3)). The elements of a § 1985(3) action are:

> (1) [A] conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Cook*, 573 F.3d at 1149. Although it appears to encompass a broad range of violations, it is clearly settled that to make out a § 1985 claim, the plaintiff must allege invidious discriminatory intent and violation of a *serious* constitutional right. *Id.* The Supreme Court has identified only two such rights as "sufficiently serious to protect against private, as well as public, encroachment[:]" the right to interstate travel and the right against involuntary servitude. *Paletti v. Yellow Jacket Marina, Inc.*, ___ F.3d ___, 2010 WL 3402271 at 4 (11th Cir. 2010) (wrongful execution of a judgment lien is not a constitutionally protected right).

Plaintiffs' claims against Morgan, Amerson, and Gulsby for violation of 42 U.S.C. § 1985(3) require little discussion. Plaintiffs have neither pled that these defendants acted with the intent to invidiously discriminate against them nor have they shown deprivation of a serious constitutional right. To be sure, the right to be free from unlawful seizures (including arrests) is a constitutional right. However, it is not the kind of right § 1985 is designed to protect. Furthermore, plaintiffs' laundry list of other deprivations is equally inapplicable to this statute and consists for the most part of factually unsupported legal conclusions (*see* doc. 146 ¶ 140). For these reasons, Count VI should be dismissed with prejudice.

### Count VII: Violation of 42 U.S.C. § 1986 by Morgan, Amerson, and Gulsby

Title 42 U.S.C. § 1986 provides a cause of action against anyone who neglects or refuses to try to prevent a violation of § 1985, despite having the power to do so. Essentially, § 1986 is a derivative action of § 1985 violations. *Park v. City of Atlanta*,

120 F.3d 1157, 1159-60 (11th Cir. 1997).  As discussed above, plaintiffs failed to state a cause of action for violation of 42 U.S.C. § 1985(3).  Because plaintiffs failed to allage a § 1985(3) conspiracy, they likewise fail to state a claim under § 1986. *See Paletti*, ___ F.3d at ___, 2010 WL 3402271 at 4.  Thus, Count VII of the complaint should also be dismissed with prejudice as to all defendants.

<u>Counts III, IV, VIII and IX:  State Claims</u>

Plaintiffs' Counts III and IV against all defendants except John Does 1-10 allege violations of Florida's Civil Remedies for Criminal Practices Act. § 772.103(3), Fla. Stat. (2010).   Section 772.103(3) states that it is unlawful for any person "[e]mployed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity...[.]"   In correlation, subsection (4) makes it unlawful to conspire to violate subsection (3). § 772.103(4), Fla. Stat. (2010).  Plaintiffs reincorporate the facts and allegations used to support Count I to support Count III, and additionally reincorporate Count III into Count IV (doc. 146 ¶¶ 103, 108).  That plaintiffs' factual support for these counts is predicated on the same facts supporting the federal claims does not obfuscate the fact that Counts III and IV are state claims.

Plaintiffs' Count VIII is against Mary Ann Patti and Mary Ann Patti, LLC for conversion based on the defendants' holding $62,500 in a client trust account for the benefit of PME-PAM (doc. 146 ¶¶ 155-163).  Plaintiffs' Count IX is also against Mary Ann Patti and Mary Ann Patti, LLC for legal malpractice or in the alternative legal practice negligence in conjunction with the Finnegans Wake transaction and legal representation for "family law; financial transactions, [sic] civil matters i) contracts, ii) guarantees, iii) loans, iv) financial advice, v) corporate, and vi) personal matters" (doc. 146 ¶¶  164, 166).  Both claims are grounded in state law.[18]

---

[18]  Plaintiffs incorrectly cite section 95.11 of the Florida Statutes. This section sets out the statute of limitations for actions for actions other than recovery of real property. The substantive actions are common law tort actions as set out in Florida case law. *See United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. Fla. 2009) (definition of tort of conversion); *Law Office of David J. Stern, P.A. v. Security Nat. Servicing Corp.*, 969 So.2d 962, 966 (Fla. 2007) (elements of tort of legal malpractice); *Curd v. Mosaic Fertilizer, LLC*, 39 So.3d 1216, 1227 (Fla. 2010) (elements of common law negligence).

A district court may decline to exercise supplemental jurisdiction over state claims arising out of the same case or controversy when the court has dismissed all claims over which it has original jurisdiction.  42 U.S.C. § 1367(c)(3); *see also City of Chicago v. Inter'l Coll. of Surgeons*, 522 U.S. 156, 172-174, 118 S. Ct. 523, 533-34, 139 L. Ed. 2d 525 (1997) (the Court weighed the respective interests and exercised jurisdiction over the state law claims).  When considering whether dismissal is appropriate, the court should consider "and weigh in each case, and at every state of the litigation, the values of judicial economy, convenience, fairness, and comity."
 *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 619, 98 L. Ed. 2d 720 (1988) (respondent's single federal law claim was eliminated early in the litigation, allowing  the court discretion to relinquish jurisdiction over the state law claims).

Weighing the specific factors in the case at bar, it is recommended that the court decline to exercise supplemental jurisdiction.  Plaintiffs' state law claims within this complaint are in the first stage of litigation (*see* doc. 146).  Furthermore, plaintiffs are not foreclosed from bringing their claims of prohibited activities, conversion, and legal malpractice or in the alternative legal practice negligence in state court.  *See* § 95.11(3)(a), (h), Fla. Stat. (2010) (four year statute of limitations for negligence and conversion); § 772.17, Fla. Stat. (2010) (five year statute of limitations for violations of Chapter 772).  In the interests of judicial economy and comity, this court should dismiss Counts VIII and IX of plaintiffs' fourth amended complaint without prejudice.  If plaintiffs wish to pursue these claims they may do so in state court in accordance with the laws of the State of Florida.

## Conclusion

At its core, this complaint evinces a personal dispute between two families stemming from a business transaction gone bad.  The parties' personal and perhaps contractual problems cannot masquerade as federal claims.  When all the pretense is removed, plaintiffs basically claim defendants hated them and tried to make their lives miserable.  This may very well be so, but forming a "vendetta to run the Levitans 'out of town'" or a "scheme to ruin plaintiffs" or to "jeopardize Plaintiffs

[sic] wellbeing" is not a scheme to defraud, nor is it racketeering activity, a violation of civil rights, or a conspiracy to violate the same (*see* doc. 146 ¶¶ 36, 76, 85(ii) [sic] o.).

For the reasons set forth above and summarized again here, the plaintiffs' complaint should be dismissed in its entirety. Plaintiffs' fourth amended complaint is still a borderline shotgun pleading. Even setting that aside, plaintiffs' federal claims fall far short of pleading facts with the specificity required by Fed. R. Civ. P. 8, 9(b), 12(b)(6) and *Twombly*, *Iqbal*, and *Blue Cross*, *supra.* Therefore, Counts I, II, V, VI, and VII should be dismissed with prejudice as to all defendants. Additionally, because this court should decline to exercise supplemental jurisdiction over the state claims, Counts III, IV, VIII, and IX should be dismissed without prejudice as to all defendants.

Based on the foregoing, it is respectfully RECOMMENDED:

1. Defendants M.A.P. Title Insurance Agency, LLC, Mary Ann Patti, LLC, and Mary Ann Patti's motion to dismiss the third amended complaint (doc. 97) is DENIED as moot.

2. Defendants Keith Guthrie, Ram 2000 Contractors, Inc., and Scenic View Properties, LLC's motion to dismiss the third amended complaint (doc. 99) is DENIED as moot.

3. The motion to file a fourth amended complaint by plaintiffs (doc. 144) is GRANTED.

4. The fourth amended complaint filed by plaintiffs (doc. 146) is DISMISSED sua sponte for the reasons set forth herein.

5. That said dismissals be with prejudice as to Counts I, II, V, VI, VII, and without prejudice as to Counts III, IV, VIII, and IX.

6. That in light of the foregoing, plaintiffs' motion for joinder (doc. 147) is DENIED as moot.

At Pensacola, Florida, this 8th day of February, 2011.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

<u>**NOTICE TO THE PARTIES**</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).